UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| TOOKIE BROWN, ) | Civil Action No.: 4:12-cv-0927-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| JOHN DOE, Transportation Officer of ) | |
| Kirkland; JANE DOE, Transportation ) | |
| Officer of Kirkland; BERNARD McKIE, ) | |
| Warden of Kirkland; DR. MOORE, fnu, ) | |
| Physician of Kirkland; DR. BENNETTE, ) | |
| fnu, Physician of Kirkland; JANE DOE, ) | |
| Nurse of Kirkland; MR. CAPERS; MR. ) | |
| BECKETT, and MRS. MURPHY, in ) | |
| their individual and personal capacities; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I.  INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his First, Eighth and Fourteenth Amendment rights.  Presently before the court are Defendants Jane Doe (nurse of Kirkland), Bennette, and Moore's (the medical defendants) Motion for Summary Judgment (Document # 108) and Motion to Dismiss (Document # 109) and Defendants Jane and John Does (transportation officers of Kirkland), Beckett, Capers, and McKie's (the officer defendants) Motion for Summary Judgment (Document # 112).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.  This Report and Recommendation is entered for review by the district judge.

**II.     PROCEDURAL HISTORY**

On June 10, 2013, the undersigned granted Plaintiff's motion for an extension of time to complete the necessary Form USM-285s to serve nurse Julie Callahan Murphy and John and Janes Doe. The undersigned granted Plaintiff fifteen days to return the Form USM-285 as to Julie Callahan Murphy and sixty days to complete and return the Form USM-285s as to Defendants John and Janes Doe. Plaintiff did not timely return the Form USM-285 as to Julie Callahan Murphy. On August 5, 2013, Plaintiff submitted, without explanation, a Form USM-285 addressed to "Mrs. Kimberly Johnson, Kirkland Reception and Evaluation Center." Because Kimberly Johnson is not a Defendant named in this action, the undersigned entered an order on August 12, 2013, directing Plaintiff to notify the court within ten days as to how Kimberly Johnson was relevant to the case. Plaintiff failed to timely respond to the order.

Thereafter, Defendants filed a motion dismiss for lack of prosecution and motions for summary judgment. Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to these motions could result in dismissal of his Complaint. Plaintiff did not file a response to these motions. However, he did file a "Declaration" in which he responded to the court's previous orders regarding service documents. Declaration (Document # 117). Plaintiff states that Kimberly Johnson is the Jane Doe Nurse named in his complaint. He states that he has identified the Jane and John Doe transportation officers as Sergeant Dorothy Mixon-Hall and Captain Willie E. Loggins, and he submits Form USM-285s for each of these individuals. However, the Form USM-285s for the two Jane Does and John Doe were due no later than August 9, 2013.[1] Although Plaintiff submitted a form for Kimberly Johnson prior

---

[1] Plaintiff states that he previously mailed these forms to the court on October 3, 2013. Although the court has no record of receiving these forms, even if it did, the forms were sent

to this deadline, he did not abide this court's order to set forth Johnson's relevance to this case within ten days, or, by August 23, 2013. The undersigned entered an order directing Plaintiff to file a response to the pending motions for summary judgment and the motion to dismiss. Plaintiff filed a motion for continuance, requesting "a continuance after the court instruct the clerk to serve those (3) named defendants." Motion for Continuance (Document # 127). In an order filed herewith, the undersigned denied the motion.

## III.     RULE 4(m)

In their motion to dismiss, the medical defendants seek dismissal of the claims against Defendant Murphy pursuant to Fed.R.Civ.P. 4(m) and Fed.R.Civ.P. 41(b). As set forth above, Plaintiff was granted an extension of time to provide the documents necessary for the U.S. Marshals Service to serve Defendant Murphy, yet has failed to do so. Rule 4(m), Fed.R.Civ.P., provides that a Summons and Complaint must be served within 120 days of the filing of the Complaint. If such service does not occur, the Court can either dismiss the case or, if plaintiff shows good cause for the failure to serve, direct service be effected. More than 120 days has passed since the requested extension was granted. Plaintiff has not filed a response to this motion, and thus, has not argued that good cause exists for the failure to serve Defendant Murphy. Accordingly, dismissal of the claims against Defendant Murphy is appropriate.

Likewise, in their motion for summary judgment, the officer Defendants move for dismissal of the claims against the Jane and John Doe transportation officers because Plaintiff failed to serve them within the time period allowed. Following the extension of time, the documents necessary to serve these Defendants were due in August of 2013. Plaintiff neither filed the documents nor

---

almost three months past the deadline of August 9, 2013.

requested an extension of time within the deadline. In April of 2014, Plaintiff filed a Declaration in which he appears to assert, that his "non-response" was due to his transfer to Lee Correctional Institution's ATU program, which has a policy of "no inmate assistance in preparing documents." Apparently, he had been using a "jail-house lawyer" prior to his transfer because he "couldn't prepare the Complaint and other motions or otherwise comprehend the legal process." However, because Plaintiff is proceeding pro se, he is responsible for prosecuting his case, familiarizing himself with the rules of court and abiding by court orders, regardless of whether he has someone else to help him.[2] As such, Plaintiff fails to show good cause for the lack of service on the Jane and John Doe transportation officers and dismissal is appropriate pursuant to Fed.R.Civ.P. 4(m). For the same reasons, Plaintiff also fails to show good cause for the lack of service on the Jane Doe nurse[3] and dismissal is appropriate pursuant to Fed.R.Civ.P. 4(m).

## IV.    MOTIONS FOR SUMMARY JUDGMENT

### A.    Facts and Allegations

Plaintiff alleges that on September 2, 2011, two unidentified transportation officers used excessive force in the process of transporting him from the Williamsburg Federal Correctional Institution in Salters, South Carolina, to Kirkland's Reception and Evaluation Center in Columbia, South Carolina when they fastened his handcuffs and shackles too tight and then pushed him onto

---

[2] Plaintiff is familiar with the legal process, having filed at least three other cases in this court within the past two years. See Brown v. Herbert, 4:12-cv-2595-TLW (closed Feb. 28, 2014); Brown v. Reynolds, 4:12-cv-3360-TLW (closed March 7, 2014); Brown v. Fuller, 2:13-cv-3227-JMC (closed Jan. 7, 2014).

[3] The medical Defendants represent that the Jane Doe nurse is Yolanda Hernandez. However, Plaintiff states that Yolanda Hernandez was never intended to be a Defendant. Declaration (Document # 117). Nevertheless, Hernandez has not been included as a Defendant in this case.

the floor of their van when he could not step in because of the tightness of his shackles. The Complaint further alleges that the Plaintiff experienced permanent spinal injuries from this fall and that the Defendants were deliberately indifferent to his medical needs.

He alleges that once he arrived at Kirkland, he was seen by an unknown female nurse during intake, but she was not willing to address the injuries he has sustained during the transportation. He alleges that he submitted a written request to Dr. Moore for a bottom floor and bunk and two mattresses because he was in so much pain, but an unknown nurse responded that they were awaiting x-ray results. He alleges "that Dr. Moore was deliberately indifferent to his neck and back pain and/or injuries when an extended delay of any sort treatment was not given, in violation of his 8th Amendment right . . . ." Complaint p. 8. In addition, he alleges "that Dr. Bennette made false statements about [Plaintiff's] x-rays or otherwise conceal facts that prevented Brown from both petitioning the government and access to the court, in violation of both his 1st and 14th Amendment rights." Complaint p. 8.

Plaintiff alleges that Defendants Capers and McKie refused to give him the names of the two transportation officers, which prevented him from accessing the court. Complaint pp. 6-7. He asserts that Dr. Moore later issued a pass for a bottom floor cell and a bottom bunk, but Lt. Beckett told him he was too busy to move him. Dr. Neville issued a second pass on November 2, 2011, which Lt. Beckett also ignored. Complaint p. 7. He alleges that he fell down the stairs on November 7, 2011, because he was using a walker and should have been on the first floor. He alleges that Defendant Beckett refused to provide him with an incident report regarding his fall of the same date. Complaint p. 7.

Liberally construing the complaint in Plaintiff's favor as a pro se litigant, he makes the following allegations: (1) two unknown transportation officers used excessive force on September

2, 2011, (2) Dr. Moore and an unknown nurse were deliberately indifferent to his medical needs following the September 2, 2011, incident, (3) Dr. Bennett denied him access to courts and violated his First Amendment rights by providing him false information about his x-ray, (4) Capers and McKie denied him access to court by refusing to give him the names of the two transportation officers, (5) Beckett was deliberately indifferent to his medical needs or to a risk of safety when he failed to move him to a first floor cell, and (6) Beckett denied him access to court by refusing to provide him with an incident report.

The Plaintiff was transported to SCDC custody on September 2, 2011, the day he alleges he injured his back. He was seen by medical staff on September 5, 2011, and a chest x-ray was ordered, but the Plaintiff refused further treatment. SCDC Medical Records p. 18 (Ex. H to medical defendants' motion). On September 12, 2011, the Plaintiff came to sick call complaining of neck and back pain from the alleged September 2, 2011, incident. He was given pain medicine for his back, told to minimize strenuous activity, and return to sick call as needed. SCDC Medical Records p. 17. An x-ray of the cervical and lumbar spine was taken on September 15, 2011. SCDC Medical Records p. 16. The x-ray results stated "Normal anatomic variant of six lumbar vertebrae with mild transitional characteristics of L1 and L6. No spondylolysis or spondylolisthesis or other significant change." SCDC Medical Records p. 61. The Plaintiff was seen by medical staff on September 20 and September 26, 2011, with complaints that the pain medicine was not helping his continued back pain, and he was scheduled for an appointment with Dr. Moore for October 19, 2011. SCDC Medical Records p. 16. The Plaintiff was seen by medical staff on September 28, 2011, and given pain medicine. SCDC Medical Records p. 15. On October 5, 2011, he was scheduled for sick call, but did not show. SCDC Medical Records p. 15. The Plaintiff was seen by Dr. Moore on October 12, 2011, who ordered further x-rays, prescribed a different pain

medication, and observed "no objective sign of trauma." SCDC Medical Records p. 14. The x-ray results of Plaintiff's thoracic spine found a "Normal Exam, and the results for the x-ray of the Plaintiff's left shoulder found a "Normal Exam." SCDC Medical Records p. 58-59. The Plaintiff returned to sick call on October 24, 2011 complaining of leg pain. He was seen on November 2, 2011, by Dr. Neville who ordered spine and pelvis x-rays and issued the Plaintiff a walker and a bottom bunk/ground floor pass. SCDC Medical Records p. 13. The x-rays of the lumbar spine and pelvis came back "normal" on November 4, 2011. SCDC Medical Records p. 54-55.

The Plaintiff was treated by medical staff on November 7, 2011, after falling down three steps. SCDC Medical Records p. 12. He was seen again on November 15, 2011, complaining of pain, and x-rays of his lumbar spine and ankle were ordered. SCDC Medical Records p. 12. The results of the November 15, 2011 spine x-ray found "transitional S1 vertebra, otherwise normal study." SCDC Medical Records p. 53. The results of the November 15, 2011 ankle x-ray found "soft tissue swelling without evidence of osseous injury." SCDC Medical Records p. 52. The Plaintiff continued to receive treatment for his complaints of back and leg pain following the fall. SCDC Medical Records p. 5-11. He was seen by Dr. Drago on April 24, 2012, who found that "Per other MDS pain out of proportion to exam and xrays." SCDC Medical Records p. 9.

**B.     Standard of Review**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### C. Discussion

#### 1. 42 U.S.C. § 1983 Generally

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 "'is not itself a source

of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

### 2.     Exhaustion of Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that a prisoner[4] exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C.1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies. The United States Supreme Court has held that "Congress has mandated

---

[4] A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." § 1997e(h). Thus, exhaustion of administrative remedies is also required of pretrial detainees such as Plaintiff here.

exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001) (exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir.2001) (exhaustion required even though Plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to Plaintiff).

The SCDC's grievance policy has been set forth in Sweat v. Reynolds as follows:

> In order to exhaust the SCDC administrative remedy process, after unsuccessful attempts at informal resolution of the problem(s), (1) an inmate must fill out a Form 10–5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen days of the alleged incident; (2) the grievance must then be entered into SCDC's automated system, and the Institutional Inmate Grievance Coordinator ("IGC") notified so that the information in the automated system can be finalized and an attempt to informally resolve it before sending it to the Warden can be made within ten working days from the time the grievance is submitted; (3) the Warden should respond to the inmate in writing within forty days of the Warden's receipt of the Step 1 grievance and then the IGC has five working days to provide the Step 1 response to the inmate; (4) the inmate may then appeal the Warden's response by completing a Form 10–5a (Step 2 Appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (5) the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal and the Branch has another five "calendar days" to get the Step 2 appeal to the responsible SCDC official (the Division Director of Operations) for a response; (6) the Division Director of Operations then has sixty days from the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, (7) then there is another five days for the IGC to serve the inmate with the Step 2 response. SCDC Policy/Procedure GA–01.12, at §§ 11, 13.1–13.6 (Oct. 1, 2010). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. Id. at § 13.6.

Sweat v. Reynolds, C/A No. 9:11–1706–MGL, 2013 WL 593660, *4 (D.S.C. February 15, 2013); see also Ceo v. Ozmint, 2006 WL 2850538, at *2 (D.S.C. Sept. 29, 2006) ("This court may take judicial notice of its own records in this prior case.") (citing Colonial Penn Ins. Co. v. Coil, 887 F.2d

1236, 1239 (4th Cir.1989) ("'[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records'")). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir.2005) (inmate's failure to exhaust administrative remedies is an affirmative defense to be both pleaded and proven by the Defendant); Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

Plaintiff filed a grievance on September 24, 2011, concerning the incident with the transportation officers on September 2, 2011. Grievance KCI1571-11 (Ex. to officer Defendants' Motion). The grievance was returned unprocessed for Plaintiff's failure to include necessary information and sign the form and Plaintiff was given five days to file a properly completed grievance. Grievance KCI1571-11. Plaintiff did not refile the grievance. Hallman Aff. ¶ 4 (Ex. to officer Defendants' Motion).

On November 30, 2011, Plaintiff filed a grievance complaining that Dr. Bennett and a nurse lied to him on November 17, 2011, concerning the results of his x-ray of his ankle and lower back, telling him the results were negative when another nurse later told him the result had not come back. Grievance KCI2169-11 (Ex. A to medical Defendants' Motion). The grievance was denied at the step one level and Plaintiff filed a step two form. Grievance KCI2169-11. The grievance was denied at the step two level as well and Plaintiff was informed of his right to appeal to the Administrative Law Court. He did not file an appeal. Hallman Aff. ¶ 9.[5]

---

[5] Plaintiff filed another grievance on November 30, 2011, concerning the care he received by nurse Murphy and Dr. Moore following the November 7, 2011, fall on the stairs. Grievance

As an initial matter, the only issues raised in the complaint about which Plaintiff previously filed a grievance are that (1) two unknown transportation officers used excessive force on September 2, 2011, and that (2) Dr. Bennett denied him access to courts and violated his First Amendment rights by providing him false information about his x-ray.[6]

He has not filed any grievances with respect to his claims that (1) Dr. Moore and an unknown nurse were deliberately indifferent to his medical needs following the September 2, 2011, incident, (2) Beckett denied him access to court by refusing to provide him with an incident report, (3) Capers and McKie denied him access to court by refusing to give him the names of the two transportation officers, and (4) Beckett was deliberately indifferent to his medical needs or to a risk of safety when he failed to move him to a first floor cell. As such, he has failed to exhaust his administrative remedies with respect to these claims.

Next, the court must determine whether he properly exhausted his remedies with respect to the claims about which he did file a grievance. Plaintiff failed to exhaust his administrative remedies with respect to the September 2, 2011, excessive force issue because his grievance was returned unprocessed at the step one level, and Plaintiff failed to resubmit the corrected grievance within five

---

KCI2177-11 (Ex. B to medical Defendants' Motion). Grievance KCI2177-11. The grievance was denied at the step one level and Plaintiff filed a step two grievance form. Grievance KCI2177-11. His grievance was denied at the step two level as well and Plaintiff was notified of his right to appeal to the Administrative Law Court. He did not file an appeal. Hallman Aff. ¶ 9. However, his complaint is void of any reference to the medical care he received from Dr. Moore following the November 7, 2011, fall. Further, although he alleges that nurse Murphy "exhibited negative behavior" when he was brought into the medical annex following the fall, as set forth above, nurse Murphy has not been served in this action and dismissal is appropriate as to the claims against her pursuant to Fed.R.Civ.P. 4(m).

[6]Grievance KCI2177-11 and Grievance KCI2169-11 are the only two grievances Plaintiff mentions in his complaint when asked if he filed a grievance with respect to the claims he is raising in this case. He does not mention Grievance KCI1571-11 regarding the September 2, 2011, incident.

days as instructed.[7]

With respect to Plaintiff's claim that Dr. Bennett denied his access to courts and violating his First Amendment rights by giving him false information about his x-ray, he filed grievances at both the step one and step two levels and received a final agency decision. Defendants argue that Plaintiff failed to appeal the step two decision to the Administrative Law Court and, thus, has failed to exhaust his administrative remedies. However, for purposes of the § 1997e(a) exhaustion requirement, the construction of the term "administrative remedies" to include appeals through the South Carolina Administrative Law Court process is overbroad. The pursuit of the South Carolina Administrative Law Court process would invoke state judicial remedies. See James F. Flanagan, Redefining the Role of the State Administrative Law Judge: Central Panels and Their Impact on State ALJ Authority and Standards of Agency Review, Administrative Law Review 1355 (2002). In § 1983 matters Congress only intended that "administrative remedies" be satisfied. See, e.g., Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.2002) (Exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court), cert. denied, 537 U.S. 949, 123 S.Ct. 414, 154 L.Ed.2d 293 (2002); see also Johnson v. Ozmint, 567 F.Supp.2d 806, 820, n. 5 (D.S.C.2008); Duncan v. Langestein, No. 07–268, 2008 WL 153975 at *5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05–2187, 2006 WL 1341267 at *4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of prison grievance procedure exhausts administrative remedies and that § 1997(a) does not require inmates to further appeal to Administrative Law Court.)); Ayre v. Currie, No. 05–3410, 2007 WL 3232177 at *7 n. 5

---

[7] In addition, as discussed above, the two unknown transportation officers who allegedly used excessive force on September 2, 2011, should be dismissed pursuant to Fed.R.Civ.P. 4(m) for lack of service.

(D.S.C. Oct. 31, 2007); Lowry v. Davis, No. 06–509, 2006 WL 3759828 at *2 (D.S.C. Dec. 18, 2006) ("It is not necessary for the inmate to file an appeal with the state ALJ Division for matters pertaining to prisoner's conditions of confinement."). Accordingly, Plaintiff has properly exhausted his administrative remedies with respect to his claim that Dr. Bennett denied him access to court and violated his First Amendment rights by lying to him about his x-ray results.

In sum, although Plaintiff has alleged several claims against several Defendants, he has failed to exhaust his administrative remedies with respect to all of those claims except the claim that Dr. Bennett denied him access to court and violated his First Amendment rights by lying to him about his x-ray results. Therefore, summary judgment is appropriate on all other claims for failure to exhaust.

### 3.     Defendant Bennett in His Official Capacity

Bennett argues that any claim for monetary damages against him in his official capacity as an employee of the SCDC should be dismissed. In Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), the United States Supreme Court stated that a suit brought against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Suits against officials in their official capacity are simply another way of pleading an action against the entity for which the official is an agent. Monell v. Dept. of Social Servs., 436 U.S. 658, 690 (1978). Additionally, states and state agencies are not "persons" as defined by 42 U.S.C. § 1983 and therefore are not subject to suit under §1983. Will, 491 U.S. at 58. Further, the Eleventh Amendment to the United States Constitution bars a suit in federal court when the defendant is a state or a state agency. Alabama v. Pugh, 438 U.S. 781, 782 (1978). Plaintiff seeks damages in a total "not to exceed $25,000,000. Complaint p. 9. Thus, summary judgment is appropriate on his claim against Defendant Bennett in his official capacity.

      **4.     Denial of Access to Courts**

Inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 822 (1977). This means that inmates must be given "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Lewis v. Casey, 518 U.S. 343, 351 (1996)(citing Bounds, 430 U.S. at 825). To state a claim for violation of the right to access to the court, an inmate must show some interference with this right or some deficiency in the legal resources available, as well as evidence of an actual injury or a specific harm related to litigation. Id. at 349. Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts. Pink v. Lester, 52 F.3d 73, 75 (4th Cir.1995) ("negligent denial of access to the courts is not actionable under § 1983"). Lewis v. Casey, 518 U.S. 343, 349–52, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (holding that to state a claim for denial of meaningful access to the courts an inmate must allege specific injury resulting from the alleged denial).

Further, a prisoner must allege adverse consequence as a basis for a claim that the defendant's actions deprived him of meaningful access to the courts. White v. White, 886 F.2d 721 (4th Cir.1989); Morgan v. Montanye, 516 F.2d 1367 (2d Cir.1975) cert. denied, 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996) (holding that the complaint must contain specific allegations as to the actual injury sustained); Strickler v. Waters, 989 F.2d 1375, 1384 (4th Cir.1993). Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Lewis, 518 U.S. at 349.

In his Complaint, Plaintiff alleges only that "Dr. Bennette [sic] made false statements about his x-rays or otherwise conceal records and/or not obtain records reflecting his injuries" "that

prevented [Plaintiff] from both petitioning the government and access to court, in violation of both his 1st and 14th Amendment rights." Complaint pp. 6-7. He fails to allege how Dr. Bennett's action interfered with Plaintiff's access to the court or that he sustained as a result. Thus, Plaintiff fails to show that Dr. Bennett violated his right to meaningful access to the courts. Accordingly, summary judgment is appropriate.

### IV.     CONCLUSION

For the reasons discussed above, it is recommended that the medical Defendants' Motion for Summary Judgment (Document # 108) be granted, the medical Defendants' Motion to Dismiss (Document # 109) be granted, the officer Defendants' Motion for Summary Judgment (Document # 112) be granted, and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 16, 2015
Florence, South Carolina

**The parties are directed to the important information on the following page.**